# CASES

IN THE

# SUPREME JUDICIAL COURT

IN THE

COUNTY OF WALDO, JULY TERM, 1835.

---

## JACKSON *vs. The Inhabitants of* BELMONT.

In an action by one against a town, to recover for labor expended in repairing the highway, it was held, that the following vote, viz : *"* to raise $3000 — and that the Proprietors' proportion of said tax *be laid out under the inspection and direction of the Selectmen,"* did not authorise the selectmen to contract for the working out of said tax on the liability and at the charge of the town.

*Held* further, that the following certificate given by two of the Selectmen, in connexion with the vote aforesaid, did not constitute a contract binding the town, even if they had been fully authorised for that purpose, viz." This may certify that S. J. worked $41,56 of B. J's highway tax in 1828, in the district in which he lives, it being the district's proportion of the tax for that year."

THIS was an action of *assumpsit.* The writ contained two counts — the first on an account annexed, in which the defendants· were charged for " labor on the highway in 1828, on account of non-resident propietors' tax, $41,56, and interest on the same, 5 years and 11 months, $13,76.

The second count set forth a special agreement, the terms of which were, that on the 1st day of *August,* 1828, the defendants by their agents, authorised for that purpose, in consideration that the plaintiff would work out so much of the highway tax of that year, set against the name of *Benjamin Joy,* a non-resident proprietor, as fell within the district where the plaintiff lived, that the defendants undertook to pay him therefor the sum of forty-one dollars and fifty-six cents.

The plaintiff, to maintain the action, introduced *Samuel Jackson, Jr.*, a witness, who testified that in *July*, 1828, *William White Esq.*, one of the Selectmen of *Belmont*, called on the plaintiff, his father, and asked him " if he could work the Proprietors' tax for that district" — and that the plaintiff replied that he could and would — and that he accordingly did, in that and the following month, work upon the highway on account of said taxes.

He then produced the records of the town of *Belmont*, by which it appeared that the warrant for calling the annual meeting in *March*, 1828, contained the following article, *viz* : " To see " how much money the town will raise for the repairs of the high- " way." And in the proceedings of the town under it — " Voted, " to raise three thousand dollars — and that the Proprietors' pro- " portion of said tax be laid out under the inspection and direction " of the Selectmen."

He also offered the following certificate, *viz: " Belmont, Aug.* " 1, 1828. This may certify that *Mr. Samuel Jackson*, worked " forty-one dollars and fifty-six cents of *Benjamin Joy's* highway " tax in 1828, in the district in which he lives, it being that dis- " trict's proportion of the tax for that year.

> " *Wm. White,*
> " *Melzar Thomas.* } *Agents.*"

It was admitted that *White* and *Thomas*, were two of the board of Selectmen, for the year 1828, — that there was no article in the warrant calling the town meeting, having any relation to the subject matter of the vote, except the article 23d aforesaid, and that the certificate aforesaid was not given by *White* and *Thomas*, until after the expiration of their term of office.

To maintain the issue on their part, the defendants called *William White*, who testified, that in *July*, 1828, he asked the plaintiff, " if he wished to work out the tax aforesaid, or that part of " it which belonged to the district in which he lived, — that he, " said *White*, had had a conversation with *Mr. Joy's* agent, and " that he said, he did not wish any one to work the tax, except " some one who owed for land, or who wished to purchase land, " and that the plaintiff replied, either that he *was* owing for land,

" or that he had a piece of land in view which he wished to pur-
" chase, and that he should like to work the tax out." He stated
further, that the plaintiff never called for " the certificate until
" after a year, and that he then stated he wanted to settle with
" the proprietors."

Thereupon the defendants' counsel requested *Perham J.* before
whom the cause was tried in the C. C. Pleas, to instruct the
jury :

1. That there should have been an article in the warrant call-
ing the town meeting, for the specific subject upon which the
town voted, in order to render the vote legal and binding.

2. That the vote of the town, did not authorize the Selectmen
to *contract* with any individual to work out the Proprietors' tax
on the credit of the defendants.

3. That if the vote of the town did authorize the Selectmen
so to contract, yet that the agreement proved, being with one
only of the Selectmen, was not binding on the defendants.

As to the first, the Court instructed the jury, that it was com-
petent for the town, while acting under article 23d in the war-
rant to vote how the money should be expended, as well as how
much should be raised.

As to the second request, the Court instructed the jury, that,
the vote of the town was in evidence before them, and that they
were to weigh it with other evidence, and the provisions of the
statute which had been read to them, and decide whether it did
or did not authorize the Selectmen to contract with individuals
for the performance of the labor on the highways aforesaid.

As to the third, the Court instructed the jury, that, it was true
that the minority of the board of Selectmen could not bind the
majority and of consequence the defendants ; but that the act of
the minority might afterwards be ratified by the majority, and
thus be rendered obligatory upon the defendants, — and that the
jury might consider the certificate signed by *White* and *Thomas*,
as evidence of a ratifying by the majority of the act of the mi-
nority.

Under these instructions, the jury returned a verdict for the
plaintiff, — and the case was brought up to this Court on excep-
tions to the ruling of the Judge.

*W. G. Crosby*, argued in support of the exceptions, and cited, *Maine stat. ch.* 114, *sec.* 5 ; *Kupfer & al.* v. *South Parish in Augusta*, 12 *Mass.* 189 ; *Towne* v. *Jaquith*, 6 *Mass.* 46 ; *Damon* v. *Granby*, 2 *Pick.* 345 ; *Jones* v. *Andover*, 9 *Pick.* 146.

*J. Williamson*, for the plaintiff, contended, 1. that the town was fully authorised to direct the appropriation of the money — and to empower the Selectmen to make contracts in regard to the repair of the highways. *Davenport* v. *Hallowell*, 1 *Fairf.* 317 ; *Maine Laws, ch.* 118, *sec.* 16.

2. He argued that the only reasonable construction which could be put upon the vote of the town was, that it authorised the Selectmen to contract. How could the tax be worked out under their " inspection and direction" unless they had, by contract with those who should do the labor, a power to direct and control their operations ?

3. It is admitted that a minority of the Selectmen could not bind the town. But in this case, the majority act by ratifying the contract made by *White*. The town have had the benefit of the plaintiff's labor — have accepted it, and are therefore liable in this action. *Hayden* v. *Madison*, 7 *Greenl.* 76 ; *Abbott* v. *Hermon*, 7 *Greenl.* 118 ; *Smith* v. *The Proprs. of Meetinghouse in Lowell*, 8 *Pick.* 178 ; *Nelson* v. *Milford*, 7 *Pick.* 18 ; *Davenport* v. *Hallowell*, 1 *Fairf.* 317.

Parris J. — The statute of this State, *chap.* 118, making provision for the repair and amendment of highways, provides that all highways, town ways, bridges, &c. lying within the bounds of any town, shall be kept in repair and amended at the proper charge and expense of such town ; and each town is required to raise such sum of money to be expended in labor and materials on the highways as they shall determine necessary for the purpose.

This sum is to be assessed on the polls and rateable estate, personal and real, of the inhabitants, residents and non-residents of the town, as other town charges are assessed. From the exceptions, it is to be inferred that *Benjamin Joy* was taxed, as a non-resident, for the support and repair of highways in the town

of *Belmont*, in the year 1828, and that the plaintiff paid forty-one dollars and fifty-six cents of this tax by his labor on the highway. For this sum he now seeks to recover of the town.

We see no ground for the maintenance of the action. In the first place, the vote of the town did not authorise the Selectmen to hire the plaintiff, or any other person, to work upon the highways, on account of the proprietors' tax. By statute, the Selectmen are to assign to the several surveyors their divisions and limits, for making and repairing highways. The vote of the town, raising the money, and directing that the proprietors' proportion should be laid out under the inspection and direction of the Selectmen, was probably intended merely to authorise the Selectmen to assign the expenditure of the proprietors' tax on such of the roads and in such parts of the town as they should deem most necessary. Whether that was or was not the object of the vote, we are clearly of opinion that it was never intended to clothe the Selectmen with power to hire labor upon the credit of the non-resident proprietors' tax, and make the town answerable for such labor; and that the vote gives no such authority.

This construction is in perfect accordance with the acts of the Selectmen, as well as the plaintiff himself; for, in the second place, no contract was made by *White* with the plaintiff. The certificate signed by *White* and *Thomas*, merely shews that *Jackson* had paid a certain amount of *Joy's* highway tax; not a word is added about the accountability of the town, or any promise that the money shall be allowed or paid by the town. Can it be pretended that this is evidence of a contract to bind the town to pay back the money? Suppose that *Jackson* had paid *Joy's* State and county tax, and taken such a certificate as he now produces, could he thereby reclaim of the town the money he had thus voluntarily paid? Clearly not.

The testimony of *White*, places the matter beyond doubt, even if without it any doubt could remain. *Jackson* performed the labor on *Joy's* account, and took the certificate as evidence of the fact against *Joy*, intending, as he held out to *White*, to turn it towards the payment for land, which he either had purchased or was about to purchase of *Joy*.

We are decidedly of opinion, that the town never authorized the Selectmen to make such a contract as *Jackson* now attempts to set up, and that the Selectmen never made or undertook to make any such contract, and we think the jury ought to have been so instructed.

The construction of the vote of the town, under which the plaintiff claims for the Selectmen authority to make the contract, was purely a question of law, and ought to have been decided by the Court.

The verdict must, therefore, be set aside, and if the plaintiff is desirous of having a new trial, it must be at the bar of this Court.